IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY LOMBARDI, individually, )
and as Administrator of the Estate of )
Nancy Morocco, )
                                 )     Chief Judge Donetta Ambrose
            Plaintiff, )     Magistrate Judge Lisa Pupo Lenihan
                                 )
v.                                )     CIVIL ACTION NO. 08-949
                                 )
ALLSTATE INSURANCE COMPANY, )
an Illinois Corporation, )     Doc. No. 10
                                 )
            Defendant. )

## OPINION

**AMBROSE, C.J.**

Currently before the Court is Defendant Allstate Insurance Company's Motion to Dismiss pursuant to Rule 12(b)(6) (Doc. No. 10) what the Court presumes to be Counts III and IV of Plaintiff Anthony Lombardi's First Amended Complaint (Doc. No. 3).[1] The disputes in this case revolve/center around a homeowner's insurance policy issued by Defendant, Allstate Insurance Company ("Allstate" or "Defendant") to the decedent, Nancy Morocco, on her residence. Plaintiff, Anthony Lombardi, brought suit on behalf of Morocco's estate against Allstate alleging four claims: Count I - Breach of Contract; Count II - Insurance Bad Faith under 42 Pa. Cons. Stat. Ann. § 8371;

---

[1]The Court makes th is presumption because Allstate's motion to dismiss reads as follows:
     Defendant, Allstate Insurance Company ("Allstate"), hereby moves to dismiss Counts
     III and IV of Plaintiff's, Anthony Lombardi, individually and as Administrator of the
     Estate of Nancy Morocco's, Complaint.
However, Allstate refers to the "complaint" as opposed to the "first amended complaint" consistently in its brief, and the docket sheet links the motion to dismiss to the complaint as opposed to the first amended complaint, which is a function performed by the Filer/User, in this instance, Allstate. Nonetheless, Plaintiff's first amended complaint was filed nearly two months before Allstate filed its motion. Also, Allstate, for some reason, refers to Counts II, III, and IV somewhat interchangeably, and usually inaccurately, throughout its brief. However, in the interest of judicial economy, the Court will decide Allstate's motion based on these assumptions, rather than issue an order requiring Allstate to refile its motion to correct its multitudinous mistakes.

Count III - Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL"); and Count IV - State Common Law Fraud, Deceit, and/or Misrepresentation. Only Counts III and IV are the subject of Allstate's motion to dismiss.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1391(a).

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

The facts in this case are taken as alleged in Lombardi's first amended complaint and accepted as true, including all reasonable inferences that can be drawn therefrom.

Lombardi, who comes before the Court individually and as the Administrator of the Estate of Nancy Morocco, is a citizen of Pennsylvania. Nancy Morocco, the insured in this case, was also a citizen of Pennsylvania until her death on July 7, 2007. Morocco's residence was located at 732 Woodbourne Street in Pittsburgh. Morocco maintained homeowners insurance on the Woodbourne Street property continuously through Allstate.

Allstate is an Illinois corporation with its principal place of business and home office in Northbrook, Illinois. At issue in this case is a Deluxe Select Value Homeowners Policy, number 000000077815558 (the "Policy"), covering the period from June 11, 2007, until June 11, 2008, and issued by Allstate to Morocco for coverage of the dwelling and its contents at the Woodbourne Street address.

Lombardi contends that on December 5, 2007, the Pennsylvania American Water Company gave notice that water service at 732 Woodbourne Street had been terminated. Because of this notice, Lombardi asserts that he did not drain the plumbing system in the house, despite the fact that

2

there was no heat in the building. This notice, however, later proved to be inaccurate. Lombardi discovered, on December 24, 2007, that the water service had not been terminated at the property, and that extensive amounts of water had escaped the plumbing system and destroyed the dwelling and its contents. Allstate was notified of the loss on December 26, 2007. Lombardi claimed a total loss as to the structure and most of the contents.

The Deluxe Select Value Homeowner's Policy covers "sudden and accidental direct physical loss" to the dwelling and also covers personal property of the insured "anywhere in the world." Furthermore, coverage of a named insured continues after death for 180 days or until the sale of the subject property, whichever occurs first.

Allstate denied the claim as excluded from coverage under an exclusion that provides that damage caused by "freezing of plumbing" is excluded unless the policyholder has "used reasonable care" to maintain heat or shut off the water supply. The particular exclusion reads as follows:

> 14. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
> (a) maintain heat in the **building structure;**
> or
> (b) shut off the water supply and drain the system and appliances.

(First Am. Compl., ¶ 20 (citing ¶ 14 of the Policy (Ex. A to First Am. Compl. (Doc. No. 3-2) at 8)).)

Lombardi contends that Allstate denied the claim on January 2, 2008, without inspecting the premises or conducting an investigation. Lombardi maintains that the exclusion does not apply because, among other things, he acted reasonably under the circumstances.

Lombardi also claims that Allstate charged excessive premiums on the policy and failed to

apply applicable discounts in prior policy years. Allstate's premiums were to be calculated using "rules, rates and forms on file, if required, for [Allstate's] use in [policyholder's] state." Lombardi claims that Allstate failed to use the rules and rates in calculating the policy's premium but he does not say how.

Lombardi brought the instant action by way of complaint filed on July 7, 2008, and then, before Allstate had filed a response, Lombardi filed his first amended complaint on July 17, 2008, asserting the four claims delineated above. Allstate filed its motion to dismiss on September 15, 2008, seeking to foreclose Counts III and IV of Lombardi's first amended complaint. The motion has been briefed and responded to, and is thus ripe for disposition.

## II.    **STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (May 18, 2009) (citing *Twombly, supra*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement,"

4

> but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57). In all events, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

In applying this standard, the court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985). The court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Indeed, as the Supreme Court reiterated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly. Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555).

Courts will consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consider these documents, as well as indisputably authentic documents, without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410,

1426 (3d Cir. 1997).

## III.  ANALYSIS

As this federal court's jurisdiction is predicated on diversity of citizenship, the case must be adjudicated in accordance with applicable state law. *Erie Railroad v. Tompkins,* 304 U.S. 64, 78 (1938).  The parties do not dispute that Pennsylvania law controls the substance of this action. Federal law governs this case procedurally. *Hanna v. Plumer,* 380 U.S. 460, 473-74 (1965).

### A.  UTPCPL Claim - Count III

The purpose of the UTPCPL is to protect consumers from "fraud and unfair or deceptive business practices." *Commonwealth ex rel. Corbett v. Peoples Benefit Servs., Inc.,* 923 A.2d 1230, 1236 (Pa.Commw. Ct. 2007) (citing *Commonwealth ex rel. Creamer v. Monumental Prop., Inc.,* 329 A.2d 812 (Pa. 1974)); *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 564 (3d Cir. 2008) (citing *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.,* 605 A.2d 373, 375 (Pa. Super. Ct. 1992)). Moreover, the Pennsylvania Supreme Court has emphasized that the underlying foundation of the UTPCPL is fraud prevention and, as such, it is to be liberally construed to effect that purpose. *Creamer,* 329 A.2d at 816-17.  The Pennsylvania Legislature included in the UTPCPL a private right of action for "[a]ny person who purchases . . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201-3] . . . ." 73 P.S. § 201-9.2(a).  Pursuant to the UTPCPL, "unlawful acts or practices" are defined as "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of [73 P.S. § 201-

6

2(4)] . . .." 73 P.S. § 201-3.

In Count III, Plaintiff asserts violations of subsections (v), (vii), (xiv), and (xxi) of § 201-

2(4), which provide in relevant part:

> **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:
>
> (v)    Representing that . . . services have . . . characteristics, . . . uses, benefits . . . that they do not have . . . ;
> (vii)    Representing that . . . services are of a particular standard, quality . . . if they are of another;
> (xiv)    Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of . . . services is made;
> (xxi)    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

73 P.S. § 201-2(4)(v), (vii), (xiv), & (xxi)[2] (Pl.'s Brief in Opp'n to Def.'s Mot. to Dismiss (Doc. 12),

at 3-4.) In claims involving insurance policies, the court of appeals has explained that "'[i]n

Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause

of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes

nonfeasance, the failure to perform a contractual duty, is not actionable.'" *Gardner,* 544 F.3d at 564

(quoting *Horowitz v. Fed. Kemper Life Assur. Co.,* 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon*

*v. Pa. Blue Shield,* 548 A.2d 600, 604 (Pa. Super. Ct. 1988)). With these legal precepts in mind, the

Court turns now to the parties' arguments.

Allstate advances two arguments in support of its motion to dismiss Plaintiff's UTPCPL

claim. First, Allstate submits that under established Pennsylvania law, the UTPCPL provides relief

only for misfeasance, as opposed to nonfeasance, and the "gist" of Plaintiff's UTPCPL claim is that

---

[2]Subsection (xxi) of § 201-2(4) is commonly referred to as the "catchall provision" of the UTPCPL.

Allstate promised coverage for all water loss and failed to pay a water loss claim in violation of the insurance contract and/or oral representations, which constitutes nonfeasance.[3] Allstate points to the court of appeals decision in *Horowitz, supra,* for the proposition that an insurance company's mere refusal to pay a claim constitutes nonfeasance, and is a failure to perform a contractual obligation, and therefore, is not actionable under the UTPCPL. Based on *Horowitz,* Allstate submits that Plaintiff does not have an actionable claim under the UTPCPL because the facts alleged in support of that claim constitute only nonfeasance.

In response, Lombardi counters that the allegations in Count III of his first amended complaint go well beyond a simple failure to pay and indeed, allege acts of misfeasance. In support, Plaintiff points to the following allegations in the first amended complaint to show misfeasance—that Allstate:

- failed to properly investigate or handle the claim [¶31a]
- engaged in unlawful claims handling and insurance practices [¶31e]
- concocted the application of an exclusion which was inapplicable and void [¶31f]
- used claims handling techniques designed to systematically deny payment and prevent claim evaluation [¶31h]
- deliberately caused unwarranted delay [¶31m]
- deliberately imposed excessive premiums [¶31n]
- misrepresented the policy and the cost [¶31o]

---

[3] Allstate also appears to be arguing that because the factual allegations in the first amended complaint do not sound in malfeasance, the "gist of the action" doctrine prevents the metamorphosis of a breach of contract claim into an Unfair Trade Practices claim. However, Allstate fails to provide any explanation or legal authority for this argument, and Plaintiff responds by stating merely that such argument indicates a misunderstanding of the first amended complaint on Allstate's part. Arguments lacking any substantive or meaningful analysis are deemed to be undeveloped and wholly inadequate and may be disregarded by the court. *See Massie v. U.S. Dep't Housing & Urban Development,* Civ.A. No. 06-1004, 2007 WL 184827, *3 (W.D.Pa. Jan. 19, 2007), *vacated in part on other grounds on reconsideration,* 2007 WL 674597 (W.D.Pa. Mar. 1, 2007) (citing *Pennsylvania v. U.S. Dep't of Health & Human Serv.,* 101 F.3d 939, 945 (3d Cir. 1996) ("conclusory assertions unaccompanied by substantial argument will not suffice to bring an issue before the court")). As neither party has offered any analysis or case law in support of this argument, the Court declines to consider Allstate's "gist of the action" doctrine argument vis a vis Plaintiff's UTPCPL claim.

(Doc. 12 at 5.) Lombardi submits that reading the allegations in the first amended complaint as a whole and, in particular, paragraphs 1 through 32 as part of Count III, he has pled misfeasance in violation of the UTPCPL. Lombardi further contends that district courts from this District and the Eastern District have denied motions to dismiss UTPCPL claims based on similar allegations of misfeasance.[4] Thus, Plaintiff contends that the first amended complaint states an actionable UTPCPL claim, and therefore, dismissal of Count III would be improper.

After reviewing the factual allegations in the first amended complaint, the Court concludes that Plaintiff has asserted acts of misfeasance in addition to nonfeasance. Plaintiff alleges that Allstate, among other things, failed to properly investigate, evaluate, negotiate or otherwise properly handle the claim; engaged in improper, unfair and unlawful claims handling and insurance practices; concocted the application of an exclusion which void or not applicable; used claim handling techniques designed to systematically deny payment to claimants and to prevent claim evaluation;

---

[4]For example, Lombardi cites *Smith v. Nationwide Mut. Fire Ins. Co.,* 935 F.Supp. 616, 621 (W.D.Pa. 1996)(construing complaint in plaintiff's favor, court held allegation of improper post-loss investigation stated actionable misfeasance); *Parasco v. Pacific Indemn. Co.,* 860 F.Supp. 644, 648 (E.D.Pa. 1994) (allegations as to insurer's unfair and nonobjective post-loss investigation and misrepresentations regarding the nature of its contractual obligations constituted misfeasance for purposes of the UTPCPL); *Mantakounis v. Aetna Cas. & Sur. Co.,* No. Civ. A. 98-4392, 1999 WL 600535, at *6 (E.D.Pa. Aug. 10, 1999) (noting generally that improper investigation by an insurer is generally actionable under the UTPCPL, but dismissing claim because insurance policy was commercial in nature); *Layton v. Liberty Mut. Fire Ins. Co.,* 530 F.Supp. 285 (E.D.Pa. 1981) (alleged refusal to settle a claim for uninsured motorists benefits stated a claim under the UTPCPL for unfair or deceptive practices); *Carlucci v. Maryland Cas. Co.,* Civ. A. No. 98-CV-3294, 1999 WL 179750, * 1 (E.D.Pa. Mar. 15, 1999) (allegations that insurer failed to investigate, evaluate, negotiate and otherwise handle the insured's claim *properly* stated a claim under the UTPCPL); *Lites v. Great Am.Ins. Co.,* Civ. A. No. 00-CV-525, 2000 WL 875698, *5 (E.D.Pa. June 23, 2000) (denying motion to dismiss UTPCPL claim where plaintiff alleged a refusal to pay an uninsured motorists claim, use of delay tactics, lack of reasonable basis to deny the UM claim, a "woefully" inadequate settlement offer, forcing unnecessary litigation, and improper investigation of claims); *Clugston v. Nationwide Mut. Ins. Co.,* No. 3:05-CV-2680, 2006 WL 1290450, * 3 (M.D.Pa. May 10, 2006) (allegations that the insurer failed or refused to conduct an adequate investigation and evaluation of the loss, and failed or refused to maintain proper communication with him with respect to the loss, suggested more than nonfeasance and thus the court denied the motion to dismiss); *Abramson v. State Farm Ins.,* No. Civ.A. 92-7239, 1993 WL 126413, at *6 (E.D.Pa. Apr. 16, 1993) (allegation that insurer acted affirmatively and in bad faith to frustrate the plaintiff's claim was sufficient to withstand a motion to dismiss UTPCPL claim).

compelled plaintiff to bring this lawsuit and to incur substantial counsel fees; and misrepresented the policy benefits and premium charges. (First Am. Compl. ¶¶ 31(b), (e), (f), (h), (m), & (o).) Viewed in the light most favorable to Plaintiff, the Court finds these allegations are sufficient to show misfeasance for purposes of a motion to dismiss. *See, Carlucci, supra,* and *Abramson, supra*; *see also Silberg v. Employers Mut. Cas. Co.,* No. Civ. A. 00-CV-3587, 2001 WL 51102, at *3 (E.D.Pa. Jan. 22, 2001) (finding insurer's misrepresentations regarding the nature, extent, terms and conditions of UIM coverage, misrepresentations as to insurer's prompt evaluation and response to claims and prompt payment of claims, and insurer's publication of misleading and deceptive promotional materials designed to induce consumers such as the insured to purchase its insurance products and services, constituted misfeasance).

Although the first amended complaint contains allegations of misfeasance, that does not end the inquiry.[5] Allstate's second argument in support of its motion to dismiss Count III calls into question the adequacy of some the other elements of Plaintiff's UTPCPL claim. To this end, Allstate argues that each of the subsections of § 201-2(4) that it allegedly violated–(v), (vii), (xiv), and (xxi)–require a showing of fraud. To set forth a cause of action under § 201-2(4)(v), Allstate contends that a plaintiff must establish that a defendant's representation is false, that the representation actually deceives or has a tendency to deceive, that the representation is likely to make a difference in the purchasing decision, and the existence of a causal connection to or reliance on the alleged misrepresentations, citing *DiLucido v. Terminix Int'l, Inc.,* 676 A.2d 1237, 1240-41 (Pa.

---

[5] It is important to note that all of the cases finding actionable misfeasance under the UTPCPL, *see* note 4, *supra,* were decided *prior* to the Supreme Court's decision in *Twombly* modifying the standard for surviving dismissal under Rule 12(b)(6).

10

Super. Ct.1996).[6] Allstate further submits that to prove common law fraud, a plaintiff must show the coalescence of the following five factors: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate result, citing in support *Prime Meats, Inc. v. Yochum,* 619 A.2d 769, 773 (Pa. Super. Ct.1993). Allstate contends that Plaintiff has failed to allege in his first amended complaint a single misrepresentation with regard to either the coverage and exclusions or the premiums, and therefore, Plaintiff's UTPCPL claims should be dismissed. Plaintiff fails to provide a response to this argument.

The Court finds that Lombardi has failed to assert sufficient factual allegations in support of his UTPCPL claim to withstand dismissal under *Twombly* and its progeny. "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of the reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.,* 854 A.2d 425, 438-39 (Pa. 2004) (citing *Weinberg v. Sun Co., Inc.,* 777 A.2d 442, 446 (Pa. 2001)) (other citations omitted). Most recently, the court of appeals reaffirmed that it is clear under Pennsylvania jurisprudence that a private plaintiff must assert factual allegations demonstrating justifiable reliance to withstand a motion to dismiss a claim for alleged violations of the UTPCPL. *Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 221-224 (3d Cir. 2008). Although the alleged violation in *Hunt* was the catchall provision, § 201-2(4)(xxi), the court of appeals noted that the Pennsylvania Supreme Court "has categorically and repeatedly stated that, due

---

[6]The Court notes that the superior court's holding in *DiLucido,* that a plaintiff need not prove the elements of common law fraud with regard to alleged violations of subsections (ii) (v), and (xvi) of § 201-2(4), was subsequently overruled in *Toy v. Metro. Life Ins. Co.,* 863 A.2d 1, 10-11 (Pa.Super.Ct. 2004), *aff'd* 928 A.2d 186, 202-03 (Pa. 2007). In *Toy,* the Pennsylvania Supreme Court held that its "decision in *Weinberg* did indeed settle that justifiable reliance is an element of the claims [plaintiff] brought under the [UTPCPL]." *Toy,* 928 A.2d at 201.

to the causation requirement in the [UTPCPL]'s standing provision, 73 Pa. Cons. Stat. § 201-9.2(a)[7] . . . , a private plaintiff pursuing a claim under the statute must prove justifiable reliance." *Id.* at 221 (footnote added) (citing *Schwartz v. Rockey,* 593 Pa. 536, 932 A.2d 885, 897 n. 16 (2007); *Toy v. Metro. Life Ins. Co.,* 593 Pa. 20, 928 A.2d 186, 202 (2007); *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 438 (2004)); *see also Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,* 401 F.3d 123, 136 (3d Cir. 2005) (interpreting the Pennsylvania Supreme Court's rule in *Yocca,* that in order "[t]o bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance[, *Yocca,* 854 A.2d at 438,] to apply to all subsections of the UTPCPL).

In the case at bar, Plaintiff has asserted violations of the UTPCPL under subsections (v), (vii), (xiv), and (xxi) of section 201-2(4). (First Am. Compl., ¶ 34.) Nowhere in Count III, or in the paragraphs prior thereto does Plaintiff set forth any factual allegations to suggest that Morocco justifiably relied on Allstate's alleged deceptive, fraudulent or unlawful conduct or representations, and that Morocco suffered harm as a result of that reliance. For that matter, Plaintiff fails to identify the misrepresentations which may have induced any such justifiable reliance, or to whom the alleged misrepresentations were made. A close examination of the first amended complaint reveals that for the most part, Plaintiff's allegations merely recite the statutory language and/or state legal

---

[7] Section 201-9.2(a) provides in relevant part:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, *as a result of* the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201-3], may bring a private action . . . .

73 P.S. § 201-9.2(a) (emphasis added).

conclusions. *See, e.g.,* First Am. Compl. ¶¶ 31(b), (c), (e), (f), (h), (m), (n), & (o); 34(b) & (d). As

the Court of Appeals explained in *Phillips v. County of Allegheny*:

> In light of *Twombly,* Rule 8(a)(2) requires a "showing" rather than a
> blanket assertion of an entitlement to relief. We caution that without
> some factual allegation in the complaint, a claimant cannot satisfy the
> requirement that he or she provide not only "fair notice," but also the
> "grounds" on which the claim rests.

*Phillips v. County of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly,* 127 S.Ct. at 1965

n.3). Thus, after *Twombly,* it is no longer sufficient to merely allege the elements of a cause of

action; rather, *Twombly* requires that the complaint "'allege facts suggestive of [the proscribed]

conduct.'" *Id.* at 233 (citing *Twombly,* 127 S.Ct. at 1969 n. 8).[8] In the case at bar, Plaintiff's first

amended complaint falls short of this requirement. *See, e.g., Weinberg,* 777 A.2d 446 (holding under

UTPCPL, plaintiff was required to allege reliance–"that he purchased [defendant's gasoline] because

he heard and believed [defendant]'s false advertising"); *Hunt,* 538 F.3d at 227 (holding plaintiff had

not adequately alleged that he justifiably relied on defendant's deceptive conduct as required under

the UTPCPL, because plaintiff had not alleged that defendant's deception induced him to purchase

defendant's products or engage in any other detrimental activity) (citing *Weinberg, supra*).

Therefore, the Court concludes, as it must under *Twombly,* that Plaintiff has failed to allege sufficient

facts to show that his UTPCPL claim is plausible on its face. Therefore, the Court will grant

Defendant's Motion to Dismiss as to Count III without prejudice.[9]

---

[8]The court of appeals' construction of *Twombly* was validated by the Supreme Court's recent decision in *Ashcroft v. Iqbal,* 129 S.Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*).

[9]It is unclear to the Court whether Plaintiff can assert any facts in support of a UTPCPL claim, as it is unclear to whom the alleged deceptions and/or misrepresentations were made. To the extent the alleged misrepresentations may have been made to the decedent, Morocco, proving that Morocco (1) relied on said misrepresentations and (2) that such reliance was justifiable, may be impossible due to her unavailability. However,

13

## B. Fraud, Deceit, and/or Misrepresentation Claim - Count IV

In support of its motion to dismiss Count IV, Allstate submits that Lombardi's claim of fraud, deceit, and/or misrepresentation is just another way of stating his breach of contract claim, and the success of Plaintiff's fraud claim is wholly dependent upon the terms of the insurance contract. Because the alleged fraud here occurred in the performance of the contract, Allstate contends the fraud is merely collateral to the breach of contract claim. Accordingly, Allstate contends Count IV is barred by the "gist of the action" doctrine. In response, Plaintiff counters that he has alleged in his first amended complaint all of the elements of a claim for fraud, deceit and/or misrepresentation, and that a finding of fraud is independent of liability under the Policy. Therefore, Plaintiff maintains, the tort allegations are not a mere duplication of his contract claim.

The "gist of the action" doctrine prevents a plaintiff from bringing a tort claim that merely restates a breach of contract claim. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (citing *Phico Ins. Co. v. Presbyterian Med. Serv. Corp.*, 663 A.2d 753, 757 (Pa. Super. Ct. 1995)). The Pennsylvania Superior Court delineated four circumstances where the doctrine has been applied–to tort claims "'(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.'" *Reed v. Dupuis,* 920 A.2d 861, 864 (Pa.Super.Ct. 2007) (quoting *Hart v. Arnold,* 884 A.2d 316, 339-40 (Pa.Super.Ct. 2005)

---

the granting of Allstate's motion to dismiss as to Count III is without prejudice because, in the event Lombardi has knowledge of facts that suggest justifiable reliance by Morocco and/or him, he may amend his complaint within 10 days of the date of the order on Defendant's motion to dismiss. Obviously, Plaintiff will need to produce evidence that will be admissible at trial to support such allegations at the summary judgment stage.

(internal citations omitted)).

In *eToll v. Elias/Savion Advertising, Inc.*, the Pennsylvania Superior Court applied the gist of the action doctrine to bar a fraud claim that arose from the performance of a contract.[10] In so holding, the superior court explained the reasoning behind the doctrine:

> As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. Thus, "[a]lthough mere non-performance of a contract does not constitute a fraud[,] it is possible that a breach of contract also gives rise to an actionable tort[.] To be construed in tort, however, the wrong ascribed to the defendant must be the gist of the action, the contract being collateral. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."

*eToll v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super.Ct. 2002) (internal citations omitted). The superior court in *eToll* went on to state:

> [C]ourts [interpreting Pennsylvania law] have **not** carved out a categorical exception for fraud, and have not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself. Rather, the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties.

---

[10]The Pennsylvania Supreme Court has yet to address the "gist of the action" doctrine, and, therefore, has not issued a ruling expressly adopting it. Pennsylvania's intermediate appellate courts have, however, and those decisions "must be accorded significant weight and should not be disregarded absent persuasive indication that the highest court would rule otherwise." *U.S. Underwriters Ins. Co. v. Liberty Mutual Ins. Co.*, 80 F.3d 90, 93 (3d Cir. 1996). The Pennsylvania Superior Court, as well as several district courts, have predicted that the Pennsylvania Supreme Court will adopt the doctrine. *See eToll v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super. Ct. 2002); *Freedom Prop., L.P. v. Lansdale Warehouse Co., Inc.*, Civ. A. No. 06-5469, 2007 WL 2254422, at *4-5 (E.D.Pa. Aug. 2, 2007).

*Id.* at 19 (emphasis in original).

A number of courts, including Pennsylvania appellate courts and district courts in this Circuit, have held that claims of fraud in the inducement, under certain factual situations, were not collateral to the contract claim, and therefore, were not barred by the gist of the action doctrine. *See, e.g., Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (fraud claim was not barred by gist of the action doctrine where plaintiff alleged that the defendant fraudulently and/or negligently agreed to perform obligations that it never intended to perform in order to induce plaintiff to agree to proposed changes in his compensation package and to forego an immediate resignation); *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.,* 256 F.Supp.2d 329, 342 (E.D.Pa. 2003) (finding plaintiff's fraudulent inducement claim, which was not based on allegation that defendant's failure to perform under the contract was fraudulent, but rather, was based on allegation that defendant's alleged misrepresentation about its objective qualifications to adequately perform under the contract was fraudulent, was not barred by gist of the action doctrine).

After examining the first amended complaint in this case, however, the Court concludes that the gist of Plaintiff's claim in Count IV is for breach of contract. The only new allegations set forth under Count IV are contained in the following to paragraphs:

> 37.  Allstate Insurance Company promised to provide property protection and charge a proper premium for the homeowner policies issued to plaintiff. Said promises were made with intent that plaintiff purchase and renew the policies of insurance. Plaintiff relied thereon, to the detriment of plaintiff.

> 38.  To the extent Allstate Insurance Company knowingly made these false promises and intended not to keep said promises, or knowingly failed to maintain proper procedures, cognizant that its policy promises would not be kept without proper

> procedures, Allstate is liable to plaintiffs for deceit, fraud, and
> misrepresentation.

(First Am. Compl., ¶¶ 37-38.)  Plaintiff argues that he has sufficiently pled facts to show two

different misrepresentations by Allstate.  First, Plaintiff contends that paragraph 37 of the first

amended complaint pleads that Allstate misrepresented what decedent was buying, as well as the

cost that would be charged for the Policy renewal.  In support, Plaintiff submits that paragraph 28

alleges Allstate knew the Policy warranted that the premium charged will be calculated and/or

determined in accordance with its rules and rates on file, and that paragraph 27 alleged that the

renewal premium was excessive and intentionally not calculated as represented in the Policy.[11]

Plaintiff thus contends he has pled all of the elements of common law fraud–he identified the

misrepresentation; alleged the misrepresentation pertained to a material fact–cost; alleged Allstate's

knowledge (general pleading is all that is required under Rule 9); submits the intent to induce the

purchase and/or renewal of insurance is obvious; alleged reliance; submits reliance cannot be said

to be unjustified; and submits he was damaged and defrauded by being subject to deliberate

overcharging.  (Doc. No. 12 at 11.)  Moreover, Plaintiff contends the duty implicated by his

allegation of misrepresenting the premium to be charged is one imposed by both society and the

legislature–40 P.S. § 1184(a), (g) & (h).  According to Plaintiff, the duty is not contract dependent,

but merely memorialized in contract.

The second misrepresentation identified by Plaintiff relates to a provision in the Policy

---

[11]The Policy language cited in paragraph 28 of the first amended complaint appears on page 4 of the Policy
(Doc. No. 3-2).

providing continued coverage for the insured's property after the insured's death.[12] Plaintiff submits that reading the first amended complaint as a whole (in particular, the allegations in paragraph 31), Count IV pleads that Allstate intentionally misrepresented that "plaintiffs and property" were protected in the event of death, Allstate has deliberately frustrated the claim, and never intended to provide the coverage it represented. (Doc. No. 12 at 12-13.) Plaintiff argues that it is the misrepresentation, not the contract, that is at issue. Thus, for the same reasons stated with regard to the first misrepresentation, Plaintiff maintains that his fraud claim is independent of any liability under the Policy.

An examination of the allegations in paragraphs 37 and 38 of the first amended complaint does not convince the Court that Plaintiff has sufficiently pled facts to show misrepresentation by Allstate. The first sentence in paragraph 37 merely restates Allstate's obligation under the Policy. The rest of that paragraph consists of conclusory statements and/or conclusions of law which may not be considered by the Court in determining the sufficiency of a claim for purposes of Rule 12(b)(6). *See Twombly, Phillips,* and *Iqbal, supra.* As the district court opined in *Galdieri v. Monsanto Co.,* a "'breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced' or alleging the contracting parties never intended to perform.'" 245 F.Supp. 2d 636, 650 (E.D.Pa. 2002) (quoting *Pinkert v. John J. Olivieri, P.A.,* No. 99-380-SLR, 2001 WL 641737, at *5 (D.Del. 2001)) (other citation omitted).[13] Similarly in the case

---

[12]Essentially, the Policy provides that in the event of the insured's death, coverage will continue for the insured's legal representative, while acting in such capacity, for 180 days after the insured's death or until the sale of the insured property, which ever event occurs first. (Doc. No. 3-2 at 5.)

[13]In *Galdieri,* plaintiffs asserted a misrepresentation claim, the essence of which was that defendant-employer, knowing the plaintiffs-employees were key employees, induced them to enter into employment agreements and remained in defendant's employ through the promise of the creation of a long-term incentive compensation plan. 245 F.Supp. 2d at 650. The district court found that plaintiffs' misrepresentation claim was intertwined with their

at bar, Plaintiff appears to be attempting to bootstrap a fraud claim onto his breach of contract claim with threadbare recitals of the elements of a common law contract claim. This he cannot do.[14]

Finally, Plaintiff argues that he has asserted factual allegations that suggest Allstate has engaged in a deliberate scheme to overcharge Plaintiff and avoid providing benefits, which suggests more than nonfeasance. Plaintiff's argument completely misses the mark. In determining whether a breach of contract can also give rise to an actionable tort, the Pennsylvania appellate courts do not apply a nonfeasance–malfeasance test, but rather, apply a gist of the action analysis–"[t]o be construed as in tort, . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Bash v. Bell Tel. Co. of Pa.,* 601 A.2d 825, 829 (Pa.Super.Ct. 1992), *superseded by Pa.R.A.P. 341 on other grounds* (citations omitted); *see also eToll,* 811 A.2d at 14 (citing *Bash, supra*). When this Court applies the gist of the action test to this case, it is compelled to conclude that the factual allegations in the first amended complaint allege, at best, nothing more than fraud in the performance of the contract. In such a case, the courts have held the alleged fraud is merely collateral to the contract claim for breach of those duties. *eToll,* 811 A.2d at 19.

The Court finds the superior court's analysis in *eToll* persuasive. In *eToll,* plaintiff, a software developer, entered into an agreement with defendant, an advertising company, to market

---

contractual claims and therefore dismissed the former under the gist of the action doctrine. *Id.* at 650-51.

[14]Plaintiff's fraud, deceit and/or misrepresentation claim fails for another reason–his factual allegations fall short of that required under *Twombly* and its progeny, for the reasons stated previously in this Opinion. *See* discussion at pages 11-13, *supra.* In addition, the Court notes inaccuracies in the allegations pled in paragraph 37 (and elsewhere) in the first amended complaint. For example, the Policy attached to the first amended complaint (Doc. No. 3-2), indicates that the Policy was issued to the decedent, Morocco, yet in paragraph 37, Lombardi alleges that the Policy was issued to him, that the promises therein were made by Allstate with the intent that Lombardi purchase and renew the insurance policies, that he relied on those promises to his detriment. These allegations are clearly contrary to the express language in the Policy. Also, Plaintiff provides no factual allegations to support that the reliance was justifiable. Accordingly, Plaintiff has failed to plead sufficient facts to show that his fraud, deceit, and/or misrepresentation claim is plausible on its face.

and advertise plaintiff's email product. 811 A.2d at 12. In that case, plaintiff instituted suit against

the defendant and some of its employees alleging, inter alia, claims for fraud and breach of contract.

The essence of plaintiff's fraud claim was that defendant's employees told plaintiff that they had the

knowledge, expertise, and experience to advertise and market plaintiff's product properly, and

defendants' employees executed several schemes designed to allow defendant to fraudulently obtain

money from plaintiff. *Id.* In determining whether plaintiff's fraud claim was barred by the gist of

the action doctrine, the superior court looked to the allegations in support of plaintiff's fraud claim,

in particular:

> [Plaintiff] alleged that the [defendants]: (1) deceived [plaintiff] into
> thinking that certain goods and services were being billed to
> [plaintiff] at cost, when in fact the defendants were charging inflated
> prices; (2) deliberately submitted bills containing fictitious charges
> and unauthorized markups; (3) concealed less expensive ways to
> accomplish a "market launch" of the product; (4) took undisclosed
> kickbacks and commissions; (5) told [plaintiff] that they had
> performed certain services under the contract when they had not done
> so; (6) misrepresented to [plaintiff] that certain targets had no interest
> in email products, when in fact interest was high; and (7) concealed
> these schemes in order to perpetuate the overbilling and fraud.

*Id.* at 20. The superior court thus concluded:

> All of these alleged acts of fraud arose in the course of the parties'
> contractual relationship. Moreover, the [defendants'] duties regarding
> billing and performance were created and grounded in the parties'
> contract. Finally, these are the types of damages which would be
> compensable in an ordinary contract action; thus, the claim would
> essentially duplicate a breach of contract action to recover the
> allegedly-overbilled charges. The fraud at issue was not so tangential
> to the parties' relationship so as to make fraud the gist of the action.
> Rather, we conclude that the fraud claims are inextricably intertwined
> with the contract claims. Because the gist of [plaintiff]'s fraud action
> lies in contract, the trial court did not err as a matter of law in
> dismissing the fraud claim under the gist of the action doctrine.

*Id.* at 20-21. Similarly here, Plaintiff alleges essentially that Allstate deceptively charged excessive premiums and misrepresented that coverage would be provided under the Policy for property damage when in fact it had no intention of paying out under the Policy. In the Court's view, all of the alleged acts of fraud, deceit and/or misrepresentation arose from the contractual relationship between the decedent and Allstate. Indeed, Plaintiff does not point to any alleged misrepresentations or allegedly inducive or deceptive conduct that occurred outside of the representations stated in the Policy itself. Consequently, the fraud claim cannot be divested from the breach of contract claim, but rather, is inextricably intertwined with it. Accordingly, Plaintiff's fraud, deceit, and/or misrepresentation claim is barred by the gist of the action doctrine.[15]

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Defendant's motion to dismiss Count III and Count IV without prejudice. An appropriate order will follow.

DATED: June 23, 2009

BY THE COURT:

*Donetta W. Ambrose*

DONETTA W. AMBROSE
United States District Judge

cc:    All Counsel of Record
       *Via Electronic Mail*

---

[15] In light of the Court's ruling on the motion to dismiss Count IV, Court declines to consider Allstate's alternative argument that the first amended complaint fails to state a claim for fraud and/or misrepresentation because it fails to plead the requisite acts with particularity as required by Fed.R.Civ.P. 9(b).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY LOMBARDI, individually, and as Administrator of the Estate of Nancy Morocco, | ) ) ) | Chief Judge Donetta W. Ambrose Magistrate Judge Lisa Pupo Lenihan |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-0949 |
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation, | ) ) | Doc. No. 10 |
| Defendant. | ) ) ) | |

## ORDER

**AND NOW**, this 23rd day of June, 2009, it is hereby **ORDERED** that the Defendant's

Motion to Dismiss (Doc. No. 10) Counts III and IV of Plaintiff's First Amended Complaint is

**GRANTED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff is entitled to file an Amended Complaint,

curing the deficiencies noted in the Opinion, within ten (10) days of the date of this Order.

DONETTA W. AMBROSE
Chief United States District Judge

cc:     All Counsel of Record
        *Via Electronic Mail*