IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Lombardi, individually and as Administrator for the Estate of Nancy Morocco, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 8-949 |
| Allstate Insurance Company, | ) ) | |
| Defendant. | ) | |

AMBROSE, District Judge

# OPINION
### and
# ORDER OF COURT

Nancy Morocco owned a house on Woodbourne Street in Pittsburgh, Pennsylvania. For a number of years she insured that house through a Deluxe Select Value Homeowners Policy ("the Policy") issued by Defendant, Allstate Insurance Company ("Allstate").[1] That Policy remained in place from June 11, 2007 until June 11, 2008, with all necessary premiums being paid.

Ms. Morocco died in July of 2007. Plaintiff, Anthony Lombardi, Ms. Morocco's brother, was appointed Administrator of the Estate. After her death, the house remained empty; though full of its original contents. Lombardi showed the house on a

---

[1] The Policy number at issue was 000000077815558.

few occasions to prospective buyers and checked on it several times. The electrical power to the home was shut off at some point in August of 2007. The heat was not maintained either. On December 4, 2007, Lombardi telephoned the Pennsylvania American Water Company and requested that the water service to the residence be terminated.[2] He later visited the house on December 24, 2007 following a phone call from a neighbor who heard noises coming from the house. He saw a notice of termination on the door indicating that the water company had terminated water service on December 5, 2007 (which proved to be inaccurate). Yet when he opened the door, the house was full of water.

Following the discovery of the extensive water damage, Lombardi called Allstate. After an approximately three minute call, during which time Lombardi informed Allstate that the water had been turned off at the residence, the Allstate adjuster verbally informed Lombardi that the claim was denied. On January 2, 2008, Allstate issued a written denial of the claim. Prior to issuing the written denial, Allstate had not inspected the premises nor conducted an investigation.

Lombardi then initiated this action against Allstate asserting three claims: (1) breach of contract; (2) insurance bad faith under 42 Pa. Cons. Stat. Ann. § 8371; and (3) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL").[3] Discovery has closed and Lombardi has filed a Motion for Partial Summary Judgment seeking the entry of judgment, in his favor, on the breach of contract claim. See ECF No. [57]. Allstate counters with its own Motion for

---

[2] Though Lombardi had called for the water service to be shut off, he had not turned the water off at the shut off valve nor had he drained the appliances of water.

[3] Though Lombardi initially included another count entitled "State Common Law Fraud, Deceit, and / or Misrepresentation," that count was abandoned following an Opinion and Order resolving a Motion to Dismiss.

2

Summary Judgment seeking the entry of judgment on Counts I, II and III of the Second Amended Complaint. See ECF No. [61]. After careful consideration, and for the reasons set forth below, the Motions are granted in part and denied in part.

Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Where the nonmoving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden,

the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

Analysis

1. Breach of Contract – Failure to Pay on Claim

Lombardi contends that Allstate breached the contract it had with his deceased sister when it failed to pay for the water damage. Each party contends that it is entitled to the entry of summary judgment in its respective favor on this issue. The parties' Motions and Briefs crystalize two discrete issues necessary for resolving this matter: (1) a dispute over the language of the Policy; and (2) a dispute over whether the loss here stemmed from a frozen pipe. Although I do not believe the first issue raises genuine issues of material fact preventing the grant of summary judgment, I do believe the second dispute does.

(a) The Policy Language

The Policy calls for an application of Pennsylvania law. "Under Pennsylvania law … the interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." Scottsdale Insurance Company v. City of Easton, 379 Fed. Appx. 139, 143 (3d Cir. 2010), *citing*, Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) and Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 3000, 469 A.2d 563, 566 (1983). "The goal of insurance contract interpretation is to 'ascertain the intent of the parties as manifested by the language of the policy.'" Scottsdale, 379 Fed. Appx. at 143, *citing*, Visiting Nurse Ass'n. v. St. Paul Fire & Marine

4

Ins. Co., 65 F.3d 1097, 1100 (3d Cir. 1995). [4] According to the Third Circuit court, "in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009).

Here, the Policy covers "sudden and accidental direct physical loss" to the dwelling and also covers personal property of the insured. See, ECF No. [60-2], p. 7. In this sense, Lombardi has met his burden of establishing that the claim at issue falls within the Policy's grant of coverage. Indeed, the parties do not meaningfully dispute that the damage at issue was caused by a "sudden and accidental direct physical loss" to the dwelling. Thus, the issue before me is whether Allstate has met its burden of demonstrating that an exclusion applies. The exclusion at issue removes from such coverage, losses caused by:

> 14. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems, or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
> (a) maintain heat in the **building structure**; or
> (b) shut off the water supply and drain the system and appliances.

See, ECF No. 60-2, p. 9 (emphasis in original).

---

[4] The parties also include citations to black letter law regarding "ambiguous" terms in insurance contracts. "When the language of an insurance policy is clear and unambiguous, the court must enforce that language." Id., citing., Med. Protective Co., 198 F.3d at 103, and Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 735 A.2d 100, 106 (1999) (stating "[w]e will not … distort the meaning of the language or resort to a strained contrivance to find an ambiguity.") If the language of the policy is ambiguous, however, the provision should be construed in favor of the insured and against the insurance company. See Reliance Insurance Company v. Moessner,. 121 F.3d 895, 901 (3d Cir. 1997). However, neither party actually argues that any of the relevant terms is ambiguous.

5

It is undisputed that the dwelling was vacant at the time the loss was sustained. It is also undisputed that Lombardi did not maintain the heat in the building structure. See Lombardi Dep., p. 19, ECF No. [61-3]. Further, though Lombardi did call the water company and request that the water service to the house be terminated, it is unquestioned that he did not shut off the supply inside the house, nor did he drain the system or the appliances. Id, p. 31-32 (acknowledging that Mr. Hoffman turned off the water at the dwelling shut off valve when the loss was discovered) and Exhibit 4 and 7, pgs, 39 and 115-116 (reporting that Lombardi did not winterize the dwelling).

Yet Lombardi contends that, because he is not the insured, he was not obligated to comply with the obligations imposed under Section 14. According to Lombardi, those obligations apply only to the insured and the insured's resident spouse. He looks to the definitions used in the Policy in support of this contention. The Policy uses the following definitions:

1. "**You**" or "**your**" – means the person named on the Policy Declarations as the insured and that person's resident spouse.
2. "**Allstate**," "**we**," "**us**," or **"our"** – means the company named on the Policy Declarations.
3. "**Insured Person(s)**" –means **you** and if a resident of **your** household:
    a) Any relative; and
    b) Any dependent person in **your** care.

See EFC No. 60-2, p. 3 (emphasis in original). Because Lombardi was neither the insured, nor the resident spouse of the insured, he contends that he does not fit into the definition of "you" or "your." Nor, because he was not a relative residing in the insured's household or a dependent person in her care, does he believe he fits into the definition of "insured person."

6

Instead, Lombardi looks to the provision regarding "Continued Coverage After Your Death," to create a third category of persons not otherwise defined – a "legal representative" -

> If **you** die, coverage will continue for one hundred and eighty days after **your** death or until the sale of the insured property whichever event occurs first, provided that the premiums for the coverage are paid. Coverage will continue for:
> 1) **Your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
> 2) An **insured person** and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

See ECF No. 60-2, p. 6 (emphasis in original).

Lombardi reasons that because a "legal representative" is not defined as "you" or "your" in this provision, then the dictates of Section 14, which obligate "you" to use reasonable care to maintain the heat or to shut off the water supply and drain the system and the appliances in a vacant building do not apply to him.

I disagree. The language of Section 14 clearly states "**your** legal representative" – indicating that the legal representative is the equivalent of the insured. Indeed, here Anthony Lombardi does not assert a claim in his own right; he asserts one only in his capacity as the Administrator of the insured's estate. See Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 248 n. 7 (3d Cir. 2002) (stating that "[w]hen an executor or administrator continues with a decedent's claim, she 'stands in the shoes of the decedent.'"), *quoting*, Kamerman v. Ockap Corp., 112 F.R.D. 195, 196, (S.D. N.Y. 1986), Ransom v. Brenan, 437 F.2d 513, 516 (5th Cir. 1971) and Snyder v. Baumecker, 708 F. Supp. 1451, 1458 (D. N.J. 1989). See also, Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co., 367 F. Supp. 711, 718 (E.D. Pa. 2005) (stating that, [t]he survival action

for negligence, strict liability, and breach of warranty, is brought by her Administrator, Joseph Peltz, on behalf of her estate. … These claims, which could have been brought by Ms. Peltz herself if she lived, survive her death. ... Mr. Peltz as her Administrator merely stands in her shoes. ").[5] There is no meaningful distinction between Nancy Morocco and the Estate of Nancy Morocco. Upon the death of the insured, the named insured on the Policy becomes the Estate of Nancy Morocco. Because the Estate is incapable of acting on its own, it must act – or fail to act – through its administrator – here, Anthony Lombardi. Thus, "you" as used in Section 14 is understood to mean "the legal representative."

Construing the language in this manner also makes sense when applying rules of contract interpretation. Wherever possible, I must "interpret the policy so as to avoid ambiguities and give effect to all of its provisions." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004). If "you" as used in Section 14 and in the definitions is not so broad as to include the Estate of Nancy Morocco and the Administrator acting in its behalf, then the "Settlement of Loss" provision would be nonsensical. It provides that:

> **We** will settle any covered loss with **you** unless another payee is named in the policy… .

---

[5] For this reason, I find Lombardi's reference to Jacobs Constructors, Inc. v. NPS Energy Services, Inc., 264 F.3d 365, 377 (3d Cir. 2001) to be inapplicable. In Jacobs, the issue before the Court was whether the word "you" as used in the insurance policy was broad enough to mean an "additional insured." The Court held that it was not. Here, Lombardi – given that he is acting as the Administrator of the Estate – is not analogous to an "additional insured." He is analogous to the "named insured" because he is acting in the capacity of Nancy Morocco – the named insured. Nor do I find persuasive Lombardi's citation to International Ins. Co. v. Rein, 400 S.W.2d 939 (Tex. 1966), in which an insured was permitted to recover on a policy where the caretaker of his house failed to exercise due diligence in terms of draining pipes and maintaining heat. In Rein, the issue of due diligence was submitted to a jury and the jury found in favor of the insured. The court did not make any rulings as a matter of law at the summary judgment stage concerning policy language.

See Appendix 2, p. 1. As Lombardi points out, "**You**" is not explicitly defined in the Policy to include "legal representative." Consequently, unless "you" is understood to mean the legal representative of the estate of the insured, then there is no one or no entity with which Allstate can contractually settle any covered loss.[6] This term is perfectly clear and unambiguous. "You" means the policyholder. By virtue of Lombardi's status as the Administrator of the Estate of Nancy Morocco, he stands in the shoes of the Policyholder and is bound by all the obligations of the policyholder.

I similarly reject Lombardi's "public policy" argument. Requiring an administrator or executor to take reasonable steps to protect a property from the known dangers associated with frozen pipes in an unoccupied, unheated building hardly seems contrary to public policy. Indeed, it seems consistent with efforts to avoid urban blight and deterioration.

Consequently, I find that, as a matter of law, the exclusion applies. Therefore, Lombardi's Motion for Summary Judgment is denied in this respect.

(b) Frozen Pipes

As stated above, I find that, as a matter of law, Lombardi's status as the Administrator of the Estate does not exempt him from the exemption set forth below:

> 14. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems, or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
> (a) maintain heat in the **building structure**; or
> (b) shut off the water supply and drain the system and appliances.

---

[6] As Allstate points out, there are additional instances of how Lombardi's reading of the word "you" would lead to absurd results. For example, if one were to adopt Lombardi's definition, then following the death of the insured, where there is no resident spouse, the legal representative would not be under any obligation to provide notice to Allstate in the event of the loss, nor, with respect to the provision regarding "Additional Protection for Debris Removal," would there be any payment for the removal of debris.

9

See, ECF No. 60-2, p. 9 (emphasis in original). Allstate denied payment on the claim based upon its conclusion that the damage to the house was caused by frozen plumbing. I find genuine issues of material fact to exist in this regard.

Allstate has submitted the report of Nicholas Biery, Ph.D. of SEA, Ltd., who inspected a water pipe which was removed from the premises. Mr. Biery opined that "[t]he separation of the blue shut-off valve and the supply line to the faucet was caused by freezing, as was the impending separation between the other shut-off valve and supply line to the faucet." See ECF No. 61-9, p. 3. Biery also reported that, according to [www.wunderground.com](www.wunderground.com) for Pittsburgh, Pennsylvania, the nighttime temperatures dropped below freezing several times in late November and December during the relevant period of time. Id, p. 2.

In contrast, however, Lombardi submitted a report from Robert W. Sleighter, P.E. from Sleighter Engineering. Sleighter reviewed Biery's report as well as photos from the property, and a "kitchen faucet which was disconnected from the plumbing system within the home and which contain[ed] approximately 15" of the hot and cold copper supply piping including the shut-off valves." See ECF No., 67-5, p. 1. Sleighter opines that no physical evidence exists to prove that the pipe or valve was frozen. Indeed, according to Sleighter, "[t]he failure method was atypical of a frozen copper pipe which typically shows signs of deformation and / or stretching of the copper material due to expansion (water expands in volume by approximately 9% when frozen)." Id. Sleighter also challenged the citation to the temperature readings because the accuracy of the website is unknown, because the citations were to outside temperatures rather than

indoor temperatures within enclosed structures and because the citations were to "Pittsburgh" generally and did not account for local variations in temperature due to terrain, elevation, etc. Id.

With competing experts offering differing views on whether the cause of the damage to Ms. Morocco's house was caused by frozen pipes, summary judgment cannot be granted. Accordingly, Allstate's Motion is denied in this regard.

2. Bad Faith

Lombardi asserts a claim for bad faith under 42 Pa. C.S.A. § 8371. The Third Circuit Court of Appeals has adopted the legal standard set forth by the Pennsylvania Superior Court for testing the sufficiency of bad faith claims under § 8371, "both elements of which must be supported with clear and convincing evidence: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." Zintel v. Progressive Northern Ins. Co., Civ. No. 2010 WL 5230911 at * 4 (M.D. Pa. Dec. 16, 2010), *citing*, Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997), (*citing*, Terletsky v. Prudential Prop. & Cas. Ins. Co., 437 P. Super. 108, 649, A.2d 680, 688 (1994)).

Contrary to Allstate's contentions, I find that reasonable finders of fact could conclude that Lombardi has presented clear and convincing evidence that Allstate lacked a reasonable basis for denying benefits and that Allstate knew or recklessly disregarded its lack of reasonable basis. Put succinctly, a claim was denied during the course of a three minute phone call, when no admission was made which would have otherwise exempted the claim from coverage (i.e., the pipes froze). Specifically, Lombardi phoned to report a loss to Wendy McClure of Allstate. At no time during that

11

approximately three minute conversation did Lombardi state that the damage was caused by a frozen pipe. At the end of that conversation, Wendy McClure, on behalf of Allstate, denied the claim. That denial was confirmed in a phone call the next day and by letter issued within one week. At no point during that intervening week did Allstate send someone over to physically inspect the premises, despite having staff in the area. Neither, during that intervening week, did Allstate obtain weather reports or statements from neighbors concerning the weather during the relevant period of time. Nor, during the intervening week, did Allstate examine the "faulty" pipe. Nobody on behalf of Allstate assessed other pipes in the house to determine whether they exhibited any signs of damage from cold weather. Simply stated, Wendy McClure surmised, during a three minute phone call, that water damage in an unheated house during the winter must be due to a frozen pipe. Genuine issues of material fact exist as to whether this constitutes a "reasonable basis" for denying benefits and, if not, whether Allstate knew or recklessly disregarded its lack of a reasonable basis in denying the claim. The Motion for Summary Judgment is denied with respect to Count II.

    3. Breach of Contract and the UTCPCL – Charging Excessive Premiums

In his Count I claim for Breach of Contract, Lombardi also seeks relief under a breach of contract theory for what he contends is Allstate's "breach of policy" with Morocco "by charging excessive premiums and / or failing to apply applicable discounts for the homeowner insurance for the period of June 11, 2007 to June 11, 2008 and in prior years." See Second Amended Complaint, ¶ 27. According to Lombardi, Allstate had promised to charge a premium using rules and rates in part as follows:

> Any calculation of your premium or changes in your coverage will be made using the rules, rates and forms on file, if required, for our use in your state. The rates

in effect at the beginning of your current premium period will be used to calculate any change in your premium.

Id., ¶ 28. Lombardi reasons that this promise implied that the home would be fairly evaluated for coverage and that the lowest applicable premium would be charged.

Lombardi complains of similar conduct in the claim asserted in Count III under the UTPCPL, 73 P.S. § 201-1 et seq. Specifically, Lombardi complains that Allstate "guaranteed and promised" that it would "provide services" and "charge a premium for the services in accordance with the rules, rates, and forms on file," but did not. See Second Amended Complaint, ¶ 40.[7]

Allstate contends that these claims are barred by the "filed rate doctrine." "The filed rate doctrine forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate federal regulatory authority." Milkman v. Am. Travelers Life Ins. Co., 2002 WL 778272 at * 14 (Pa. C.P.Pl. April 1, 2002), *citing*, H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992). The doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue." Id. (citations omitted). The purpose of the filed rate doctrine is to: (1) preserve the regulating agency's authority to determine the reasonableness of rates; and (2) insure that the regulated entities charge only those rates that the agency has approved or been made aware of as the law may require." Id. (citations omitted).

---

[7] Lombardi's UTPCPL claim speaks of more than of simply excessive premiums. For instance, he contends that Allstate misrepresented its guarantees with respect to coverage for sudden and accidental direct physical loss (¶ 46), misrepresented its guarantees with respect to coverage after the insured's death (¶ 47) and otherwise acted in violation of the UTPCPL (¶ 48). Allstate has not addressed how these allegations relate to the filed rate doctrine. As such, these portions of the UTPCPL survive.

13

Like many states, Pennsylvania regulates its insurance industry and has established a Department of Insurance and an Insurance Commissioner. The Pennsylvania Legislature has passed the Pennsylvania Casualty and Surety Rate Regulation Act, 40 Pa. C.S. § 1181 et seq. The Act is intended to regulate insurance rates in order to avoid excessive, inadequate and unfairly discriminatory rates. The Act also provides a method for administrative review which allows the Commissioner to entertain any grievances associated with insurance premium rates. See 40 Pa. C.S. § 1185 and Taylor v. Com., Ins. Dept., 86 Pa. Commw. 486, 485 A.2d 1228, 1230 (1984) (stating that the Act "provides a remedy for "[a]ny person or organization aggrieved with respect to any filing which is in effect.").

After careful consideration, I agree with Allstate that the filed rate doctrine applies here. When examined closely, Lombardi's claims under both Count I (breach of contract) and Count III (UTPCPL) focus upon the "unfairness" of the rates Nancy Morocco paid to Allstate in exchange for what she received. He characterizes the premiums as "excessive" and complains that they were not calculated accurately. Yet he has not proffered any evidence indicating that the rates Morocco was charged differed in any material way with the rates Allstate submitted to the regulatory agency and which were approved.[8] See Richardson v. Standard Guaranty Ins. Co., 371 N.J. 449, 470, 853 A.2d 955, 967 (2004) (stating that "[w]hile the filed rate doctrine precludes a claim for damages which would indirectly cause the application of rates different from the filed rates, and would also preclude plaintiff from seeking relief, whether equitable or

---

[8] I find Lombardi's reliance on Alston v. Countrywide Financial Corp., 585 F.3d 753 (3d Cir. 2009) to be misplaced. In Alston, the court determined that the filed rate doctrine did not bar homeowners from asserting claims under the Real Estate Settlement Procedures Act of 1974, 12 USC § 2607(8)(2) that reinsurance premiums paid to an affiliate of their mortgage lender were kickbacks. Unlike Lombardi's challenges here, the homeowners in Alston were not challenging the fairness or reasonableness of the rates imposed.

14

legal, for having been misled by unconscionable sales practices which caused plaintiff to enter into a contract consistent with the filed rate, the filed rate doctrine does not preclude a consumer from suing for damages by having been deprived of benefits which were promised, and were consistent with the filed rate, but were not delivered.). The purpose of the filed rate doctrine is to preserve the regulatory agency's authority to determine the reasonableness of rates. Lombardi has given this Court no reason to depart from this doctrine. Consequently, the Motion for Summary Judgment is granted in this regard.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anthony Lombardi, individually and as | ) | |
| Administrator for the Estate of Nancy | ) | |
| Morocco, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | Civil Action No. 8-949 |
| | ) | |
| Allstate Insurance Company, | ) | |
| | ) | |
|     Defendant. | ) | |

AMBROSE, District Judge

## ORDER OF COURT

AND NOW, this 27th day of January, 2011, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motions for Summary Judgment (ECF Nos. [57] and [61]) are hereby denied and granted in part as follows:

(1) Summary Judgment is granted in favor of the Defendant with respect to Plaintiff's claim for breach of contract insofar as I find that the relevant exclusion does apply to the Administrator of the Estate. Summary Judgment is denied with respect to the remainder of the breach of contract claim because genuine issues of material fact exist as set forth in the Opinion.

(2) Summary Judgment is denied with respect to Plaintiff's claim for bad faith because genuine issues of material fact exist.

(3) Summary Judgment is granted in favor of the Defendant with respect to Plaintiff's claim set forth in Count I for breach of contract and Count III under the UTPCPL insofar as those claims are based upon the payment of excessive and / or unfair premiums. Summary judgment is granted with respect to those claims based upon the filed rate doctrine.

By the court:<br>
/s/ Donetta W. Ambrose<br>
Donetta W. Ambrose<br>
Senior Judge, U.S. District Court